

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:08cr184-1

CHRISTOPHER FRED GOAD, SR.,

      Petitioner.

## MEMORANDUM OPINION

Christopher Fred Goad, Sr., a federal inmate proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion"). (Docket No. 90.) The Government filed its response. Goad has replied. The matter is ripe for disposition.

## I. PROCEDURAL HISTORY

Goad "knowingly and voluntarily agree[d] that each of the [following] facts [were] true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt." (Statement of Facts 2.)

> From in or about February 2006, and continuing through and including April 9, 2008, in the Eastern District of Virginia and elsewhere within the jurisdiction of this court, CHRISTOPHER FRED GOAD, SR., did knowingly, intentionally and unlawfully conspire with others to manufacture 1,000 or more marijuana plants, a Schedule I controlled substance.
> As a part of that conspiracy, GOAD and his co-conspirator/wife Cynthia Goad (nee Craven), maintained a marijuana "grow house" within their primary residence, at 3309 Listerbrook Court in Henrico County, Virginia. GOAD and his wife have lived at the

target address, with their two minor children for more than ten years and have maintained it as their marital home. During the course of the operation, the defendant oversaw the marijuana cultivation and harvests, and directed the co-conspirators in the grow operation, to include his wife and others.

On April 9, 2008, law enforcement agents executed a federal search warrant at GOAD's primary residence, and recovered 641 growing marijuana plants, one root ball and an elaborate aeroponic growing system located on the ground level of a two-story, three car detached garage. Also located within the residence were six firearms and accompanying ammunition, to include an Arsenal Company, Model SSA93, caliber 7.62x39 assault rifle with a drum magazine.

On April 10, 2008, law enforcement agents executed a search warrant at GOAD's primary residence, and recovered an additional 476 harvested marijuana plants that were located in trash bags behind the garage.

The United States stipulates and agrees to the following non-binding recommendations to the Court and Probation: 1) at all relevant times, GOAD had knowledge of greater than 1,000 marijuana plants; 2) at all relevant times [GOAD] used his residence to facilitate the manufacture of marijuana; and 3) the aforementioned firearms were located within the residence, with GOAD's knowledge.

(Id. ¶¶ 1-5 (paragraph numbers omitted).)

A grand jury returned an indictment charging Goad with the following three counts: conspiracy to manufacture 1000 or more marijuana plants (Count One); manufacturing and possessing with the intent to distribute 1000 or more marijuana plants (Count Two); and maintaining a place for the distribution, storage, or use of controlled substances (Count Three). (Indictment (Docket No. 13) 1-2.) Mary Martin initially served as Goad's court

appointed counsel. Martin negotiated a plea agreement with the Government pursuant to which Goad pled guilty to Count One of the Indictment and the Government dismissed Counts Two and Three. (Plea Agreement ¶¶ 1, 11.) Based on his timely, truthful cooperation, Goad would receive a three-level reduction in offense level for acceptance of responsibility. (Id. ¶ 5.)

On June 20, 2008 the Court conducted a Rule 11 colloquy, accepted Goad's plea of guilty and ordered the preparation of a pre-sentence report ("PSR") for Goad. Immediately prior to the June 20, 2008 plea hearing, Goad signed the Plea Agreement and the Government conducted his debriefing.

On September 16, 2008, based on Goad's attempt to persuade other conspirators to lie to the Government, a Grand Jury charged Goad with two counts of attempted obstruction of justice. United States v. Goad, No. 3:08cr409, Docket No. 1, at 1-2 (E.D. Va. filed Sept. 16, 2008). The Government took the position that Goad's conduct precluded any offense level reduction for acceptance of responsibility. Subsequently, the Court granted Martin's motion to withdraw as counsel.

After granting Martin's motion to withdraw, the Court appointed Charles Gavin to represent Goad through sentencing. Gavin successfully negotiated the dismissal of the September 16, 2008 Indictment in favor of a two-level enhancement for

3

obstruction of justice and the loss of the two to three-level reduction for acceptance of responsibility in the instant case. Id. Docket No. 18, at 2. Gavin also challenged the sentencing enhancements based on Goad's leadership role and his employment of a minor, Goad's stepson, in the marijuana growing operation. Additionally, Gavin unsuccessfully moved the Court to unseal Cynthia Goad's pre-sentence report.

On February 13, 2009, the Court sentenced Goad to 210 months of imprisonment. (Judgment (Docket No. 72) 2.) Notwithstanding the waiver of the right to appeal in the Plea Agreement (Plea Agreement ¶ 6), Goad timely filed a notice of appeal. The United States Court of Appeals for the Fourth Circuit dismissed Goad's appeal. United States v. Goad, No. 09-4177, at 1 (4th Cir. Oct. 15, 2009). Goad then filed this § 2255 Motion making the following claims of ineffective assistance of counsel:[1]

> Claim One[2]　　(a) Martin coerced Goad into signing the Plea Agreement.
>
> 　　　　　　　　(b) Martin lied to Goad about the contents of the Plea Agreement.

---

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[2] Goad's "Grounds" 1-31 have been renumbered here for clarity.

(c) Martin failed to explain to Goad that, by signing the Plea Agreement, he waived his right to appeal.

(d) Martin deficiently advised Goad concerning sentence enhancements.

(e) Prior to the plea hearing, Martin wrongly advised Goad to answer all of the Court's questions in the affirmative.

(f) Martin lied to Goad concerning her relationship to an investigator in the case.

(g) Martin deficiently allowed Goad to enter a guilty plea despite her knowledge that the Government did not believe Goad's debrief statements.

(h) Martin bullied Goad into signing a Plea Agreement attributing 1000 marijuana plants to him when Martin knew that there were only 641 plants.

(i) Martin pressured Goad into signing an agreement pleading guilty to the charges of obstruction of justice.

(j) Martin failed to disclose to Goad information concerning statements made by Goad's wife (Cynthia Goad) to investigators.

Claim Two     (a) Gavin deficiently failed to make a motion to void Goad's plea agreement.

(b) Gavin failed to successfully argue that, by lying to investigators during his debrief, Goad did not breach the Plea Agreement because the Plea Agreement was not yet enforceable.

(c) After Goad hand-wrote a letter to the Court, Gavin took the letter to

have it typed and deliberately omitted some of Goad's statements.

(d) Gavin deficiently failed to call witnesses at sentencing to counter the Government's evidence of sentencing enhancements.

(e) Gavin never disputed the testimony of the Government's witnesses or statements made by the Government's counsel at sentencing.

(f) Gavin failed to challenge the sentencing enhancement for leadership.

(g) Gavin unsuccessfully challenged the enhancement for employing a minor in a drug operation.

(h) Gavin failed to challenge the firearm enhancement.

(i) Gavin unsuccessfully challenged the obstruction of justice enhancement.

(j) Gavin failed to argue that the Court's sentence for Goad was unreasonable.

(k) Gavin failed to appeal the Court's denial of Goad's motion to unseal Cynthia Goad's file.

(l) Gavin failed to present evidence of Goad's depression and suicidal tendencies.

(m) Gavin failed to challenge Goad's sentencing enhancements.

(n) Gavin lied to Goad about his right to appeal.

<table>
<tr><td></td><td>(o) Gavin failed to challenge the number of marijuana plants attributable to Goad.</td></tr>
<tr><td>Claim Three</td><td>(a) The Court abused its discretion by not awarding Goad a three-level reduction in offense level for acceptance of responsibility.</td></tr>
<tr><td></td><td>(b) The Court abused its discretion by enhancing Goad's sentence for obstructing justice.</td></tr>
<tr><td></td><td>(c) The Court abused its discretion by enhancing Goad's sentence for using a minor as an employee in a drug operation.</td></tr>
<tr><td></td><td>(d) The Court abused its discretion by enhancing Goad's sentence for possessing firearms in relation to a drug enterprise.</td></tr>
<tr><td></td><td>(e) The Court abused its discretion by imposing an excessive and unreasonable sentence on Goad.</td></tr>
<tr><td></td><td>(f) The Court abused its discretion by not allowing Goad's counsel to present evidence on Goad's behalf at sentencing.</td></tr>
</table>

## II. NON-CONSTITUTIONAL CLAIMS

The United States Court of Appeals for the Fourth Circuit rejected Claims Three (d) and Three (e) on direct review. <u>United States v. Goad</u>, No. 99-4177, at 1 (4th Cir. Oct. 15,

2009).[3] Goad fails to direct the Court to an intervening change in the law that would permit Goad to re-raise these claims. See United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Thus, the Fourth Circuit's ruling bars collateral review of Claims Three (d) and (e). Linder, 552 F.3d at 396-97.[4] Goad "may not circumvent a proper ruling on [his direct appeal claims] by re-raising the same challenge[s] in a § 2255 motion." Id. at 396 (citations omitted). Accordingly, Claims Three (d) and (e) will be dismissed.

The procedural default rule bars Claims Three (a), (b), (c), and (f) from review here, absent a showing of cause and prejudice or actual innocence, because Goad could have, but did not, raise them on direct appeal. See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982). Goad fails to show cause and prejudice or his actual innocence. Accordingly, Claims Three (a), (b), (c), and (f) will be dismissed.

---

[3] The Fourth Circuit enforced the appeal waiver provision of Goad's Plea Agreement and dismissed his claims. Goad, No. 99-4177, at 1.

[4] By raising these claims in his § 2255 Motion, Goad "once again seeks to escape the terms of his plea agreement." Linder, 552 F.3d at 392.

## III.  STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have

insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Goad's assertion that he would have pled not guilty but for counsel's alleged error is not dispositive of the issue. <u>See</u> <u>United States v. Mora-Gomez</u>, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." <u>Meyer v. Branker</u>, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (<u>citing</u> <u>Hill</u>, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. <u>Id.</u> at 369-70.

Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." <u>United States v. Lemaster</u>, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations

and quotations omitted). Accordingly, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. No circumstances exist here that would lead the Court to consider Goad's prior sworn statements anything but conclusively established. See Lemaster, 403 F.3d at 221.

## IV. CLAIMS CONTRADICTED BY THE RULE 11 PLEA COLLOQUY

Several of Goad's claims against Martin run afoul of the principles stated above. For example, Goad now states that Martin coerced and bullied him into signing the Plea Agreement (Claims One (a) & (h)), lied to him about the contents of the Plea Agreement (Claim One (b)), failed to explain the appeal waiver provision of the Plea Agreement (Claim One (c)), and failed to explain the sentencing guidelines (Claim One (d)). Goad further avers that Martin told him that, if he answered "'no'" to questions at the plea colloquy, his family would be arrested (Claim One (e)). (Mem. Supp. § 2255 Mot. 41.)

11

However, during the Rule 11 plea colloquy, Goad swore that nobody made any threats against him or made additional promises outside the Plea Agreement. (June 20, 2008 Tr. 14.) After the Court reviewed the Plea Agreement with Goad, Goad swore that he understood the agreement. (June 20, 2008 Tr. 14.) Goad specifically swore that he understood the appeal waiver provision and that he understood that, even though he gave up his right to appeal, the Government did not. (June 20, 2008 Tr. 14.) Goad swore that he and Martin discussed the Sentencing Guideline Act and its procedures and that he was "entirely satisfied" with Martin's performance. (June 20, 2008 Tr. 6.) Because Claims One (a), (b), (c), & (h) necessarily rely on the allegations contradictory to Goad's statements during the plea colloquy, these claims will be dismissed. <u>Lemaster</u>, 403 F.3d at 221.

Although Goad's representations at the Rule 11 proceeding also foreclose relief on Claims One (d) and One (e), these claims warrant a slightly more detailed discussion.

**A.    Claim One (d)**

In Claim One (d), Goad asserts that Martin "failed to advise [Goad] that his sentence according to the guideliens [sic] could be enhanced past the sentencing guidelines of level 26, which is what [Goad] was made to believe he would be

sentenced to." (Mem. Supp. § 2255 Mot. 40.) Goad maintains that if Martin had correctly advised him about potential sentencing enhancements attributable to his criminal conduct, he would not have pled guilty but would have proceeded to trial. (Id.)

The Rule 11 colloquy, however, cured any alleged deficient advice from Martin concerning the sentence Goad could expect to receive. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (quoting United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)). During the colloquy, the Magistrate Judge explained to Goad both the sentencing guidelines and the process of preparing the pre-sentence report and Goad acknowledged his understanding. (June 20, 2008 Tr. 16-18.) The Magistrate Judge also explained to Goad that the Court could sentence him to any amount of time within the statutory maximum of life in prison.[5]

---

[5] The following exchange between the Court and Goad during the Rule 11 colloquy is especially telling:

> [COURT] So until that [pre-sentence] report is culled together, no one can predict what your sentence will be or even what the guidelines will be, and I mention that because if anybody has given you an estimate of what they might be, the guidelines or the sentence, and it is your attorney's job to educate you and advise you through that entire process, but even any estimate she's given, if she has, is only a prediction. It's not a promise on which you are to rely to enter this guilty plea today; do you understand that?

13

(June 20, 2008 Tr. 5, 14-15.)   Thus, Goad cannot show that any

misinformation from Martin prejudiced him.   Foster, 68 F.3d at

88.  Accordingly, Claim One (d) will be dismissed.

**B.   Claim One (e)**

In Claim One (e), Goad claims that Martin told "him that if

he answered 'no' to any of the Judge's questions, the Judge then

will not allow the plea and would then order [Goad] to go to

trial causing [Goad's] family to be arrested."   (Mem. Supp.

§ 2255 Mot. 41.)[6]  Goad also alleges that Martin

> told [Goad] that in spite of making him believe he was
> getting a ten year sentence, that if he answered "no"
> and went to trial he could get a sentence of life
> imprisonment.  She also told [Goad] that if the Court
> did not follow the plea agreement, all plea agreements
> will stop and the way the Court operates would stop.
>     Attorney Martin lied also to [Goad], telling him
> that the Court "always" follows the plea agreements.
> Keep in mind that [Goad] thought that he would get 10
> years or less, it didn't occur to him that even though
> the Judge could sentence him to life, the Judge would
> not, based on what attorney Martin told [Goad] about
> how the plea agreement works in the federal system.

(Id.)   Goad asserts that, absent Martin's advice, he "would

never have signed the [plea] agreement."   (Id.)

---

[GOAD]     I understand that.

(June 20, 2008 Tr. 18.)

[6] The record refutes Goad's statement that his attorney
coerced him into answering in the affirmative to every question
in his plea colloquy.  Goad answered "no" to a number of the
Court's questions without any interruption of the Rule 11
proceeding.  (See, e.g., June 20, 2008 Tr. 4, 14, 21.)

The Court begins by noting that the Plea Agreement binds the parties, not the Court, a fact Goad acknowledged during his Rule 11 colloquy. (June 20, 2008 Tr. 14-15.) Furthermore, Goad fails to identify any portion of the Plea Agreement violated by the Government. During the Rule 11 colloquy, Goad swore that no one made him any promises outside of the written Plea Agreement and that no threats induced him to enter his guilty plea. (June 20, 2008 Tr. 14.) Moreover, Goad swore that he understood that the Plea Agreement did not set forth the exact sentence Goad would receive. (June 20, 2008 Tr. 14.) Thus, Goad's claim that his guilty plea was a product of counsel's promise of a ten-year sentence and her direction to always answer yes to the Court's questions directly contradicts Goad's Rule 11 statements. (Mem. Supp. § 2255 Mot. 41.) Accordingly, Claim One (e) will be dismissed.

## V.  REMAINING CLAIMS AGAINST MARTIN

### A.  Claim One (f)

In Claim One (f), Goad alleges that Martin "lied to [Goad] about her relationship to [an] investigator from [the] US Government in [Goad's] case." (Mem. Supp. § 2255 Mot. 42.) Goad asserts that Martin's previous acquaintance with a member

of the team investigating him creates a conflict of interest. (Id.)

"When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in Cuyler v. Sullivan, 446 U.S. 335 (1980) . . . ." United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) ("Nicholson I") (parallel citations omitted). Specifically, "in order to prevail on an actual conflict of interest claim, [the petitioner must show] that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 195 n.2 (4th Cir. 2010) ("Nicholson II") (quoting Cuyler, 446 U.S. at 348).

"To demonstrate an adverse effect, [Goad] must show that [Martin] did not pursue some appropriate strategy or tactic because of h[er] alleged conflict of interest." Patterson v. Va. Dep't. Corr., No. 96-7438, 1998 WL 957464, at *3 (4th Cir. Sept. 22, 1998) (citing Perillo v. Johnson, 79 F.3d 441, 449 (5th Cir. 1996); Church v. Sullivan, 942 F.2d 1501, 1512 (10th Cir. 1991)). Here, Goad does not identify or demonstrate a plausible strategy Martin refused to pursue because of the

alleged conflict of interest.  Thus, Goad's conflict of interest claim fails.  Accordingly, Claim One (f) will be dismissed.

### B.  Claim One (g)

In Claim One (g), Goad asserts that Martin "allowed [Goad] to enter a plea with full knowledge that the US Government's attorneys believed that [Goad] was lying and that the government would not uphold their end [of] the bargain."  (Mem. Supp. § 2255 Mot. 48.)  After the June 20, 2008 debrief, Martin told Goad that she suspected that the Government believed Goad answered questions dishonestly.  After Martin voiced her suspicions, Goad assured Martin that his debrief statements were indeed truthful.[7]  (Martin Aff. ¶ 21.)  Given Goad's undisputed, contemporaneous assurances of truth, his present contention that Martin knew "the government would not uphold their end [of] the bargain" (Mem. Supp. § 2255 Mot. 48) lacks factual and legal merit.  See United States v. Dyess, 478 F.3d 224, 238 (4th Cir. 2007) ("The defendant may not now fault his attorney for an outcome that is the product of his own decision-making.").

---

[7] See Emmett v. Kelly, 474 F.3d 154, 168 (4th Cir. 2007) (holding that "[t]he constitutional argument that counsel should . . . presume that his [or her] client, particularly one who is behaving in a cooperative and forthcoming manner, is being deliberately misleading . . . runs directly counter to [the] most basic premise" that defense counsel is entitled to rely on the representations of the defendant).

Even assuming that Martin disbelieved Goad's assurances of honesty, given the Government's overwhelming evidence against him, Goad fails to adduce any evidence that Martin deficiently advised him to plead guilty. Even without the two to three-level reduction for timely acceptance of responsibility, the Plea Agreement benefitted Goad by providing for immunity from further prosecution and the dismissal of Counts Two and Three of the Indictment. (Plea Agreement ¶¶ 10, 11.) Furthermore, Goad signed the Plea Agreement promising truthful cooperation prior to the debrief and Rule 11 colloquy. The record reflects Goad's full awareness that any motion by the Government for a downward departure depended on Goad's truthful cooperation and the Government would seek departure only at "its sole discretion." (Id. ¶ 16.) Thus, Goad fails to show that Martin wrongly advised him to plead guilty in spite of his dishonest conduct during the debriefing. See Saylor v. Crawford, No. 99-6659, 1998 WL 372818, at *3 (4th Cir. June 5, 1998) ("The performance prong of the Strickland test is satisfied if an attorney advises a client to plead guilty and that advice is 'within the range of competence demanded of attorneys in criminal cases.'" (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985))).

Moreover, nothing in the record indicates that, but for Martin's advice, a reasonable probability existed that Goad

would have pled not guilty and gone to trial. Goad's circumstances are the product of his dishonest conduct rather than any deficiency of counsel.[8] Accordingly, because Goad shows neither deficiency nor prejudice, Claim One (g) will be dismissed.

### C. Claim One (i)

In Claim One (i), Goad alleges that Martin "threatened, bullied and tried to coerce [Goad] into signing a 2nd plea agreement as it related to the 2nd indictment where the government charged [Goad] with two counts of Obstruction of Justice." (Mem. Supp. § 2255 Mot. 51.) Goad, however, never pled guilty to obstruction of justice. Thus, Goad cannot show prejudice resulting from Martin's alleged conduct. Strickland, 466 U.S. at 694. Accordingly, Claim One (i) will be dismissed.

### D. Claim One (j)

In Claim One (j), Goad asserts that "Martin had direct knowledge of [the] information [Goad's] wife told authorities long before [Goad] was debriefed." (Mem. Supp. § 2255 Mot. 52.) Despite having this knowledge, "Martin did not tell [Goad] that his wife, Cynthia Goad, a co-defendant, told authorities that [Goad's] son, daughter and nephew were involved [sic] in the

---

[8] Despite the knowledge that his Plea Agreement and the benefits it conferred required his truthful cooperation, Goad lied to the Government and his counsel.

grow operation." (Id.) Martin then "allowed [Goad] to enter into his [June 20, 2008] debriefing without said information." (Id.) Goad asserts that his failure to "be truthful" in the debrief resulted from Martin's failure to pass along this information. (Id. at 53.)

Goad fails to explain how Martin could possess knowledge concerning what statements Cynthia Goad, who was not Martin's client, did or did not make to investigators.[9] Nevertheless, whether or not Martin possessed the information Goad alleges, Goad cannot show prejudice based on his personal decision to violate his Plea Agreement by being dishonest. Arakelian v. United States, Nos. 08 Civ. 3224(RPP), 04 Cr. 447(RPP), 2009 WL 211486, at *6 (S.D.N.Y. Jan. 28, 2009) ("[H]aving affirmatively lied in his declaration to this Court, Petitioner cannot now shift the blame for his own misconduct onto his attorney who represented him in the matter." (citing United States v. Monzon, 359 F.3d 110, 120 (2d Cir. 2004); Tyson v. Keane, 159 F.3d 732,

_____

[9] Martin, for her part, states that "[Cynthia] Goad's attorney, Carolyn Grady, never told me any specifics about her client's statements." (Martin Aff. ¶ 48.) "Mr. Goad regularly lied to me about the facts of his case until those assorted occasions when he discovered other people involved had been truthful . . . ." (Id.)

736 (2d Cir. 1998))). Accordingly, Claim One (j) will be dismissed.[10]

## VI. CLAIMS AGAINST GAVIN

### A. Claim Two (a)

In Claim Two (a), Goad asserts that "Gavin should have moved forward to have the plea agreement voided but did not and in fact talking [Goad] into NOT pursuing the voiding of the [plea] agreement." (Mem. Supp. § 2255 Mot. 54.) Goad asserts that Gavin deficiently "lied to [Goad] in telling [Goad] that there was no way to have the plea agreement voided." (Id.)

Under Rule 11(d) of the Federal Rules of Criminal Procedure, the Court may allow a defendant to withdraw his guilty plea before sentencing if "the defendant can show a fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). A defendant has no absolute right to withdraw a guilty plea. United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). In fact, a properly conducted Rule 11 colloquy, as is the case here, creates a strong presumption that the guilty plea is valid and withdrawal may be foreclosed. United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992). In deciding whether to grant a

---

[10] The Court reiterates its previously stated finding that Martin is "an extremely qualified member of the bar, one who has proven herself in many cases in the state and federal court effectively." (Nov. 14, 2008 Tr. 14.)

motion to withdraw a guilty plea, Courts consider, <u>inter alia</u>, "whether the defendant offers any credible evidence that he did not enter the plea knowingly or voluntarily," whether a defendant "credibly asserts his legal innocence" and "whether withdrawal would inconvenience the court or waste judicial resources." <u>United States v. Harris</u>, No. 2:09CR00002, 2012 WL 32934, at *5 (W.D. Va. Jan. 6, 2012) (<u>citing</u> <u>Moore</u>, 931 F.2d at 248).

As stated above, no evidence suggests that Goad's statements at his plea hearing were anything but knowing and voluntary. Given Goad's failure to assert his legal innocence and the overwhelming weight of the evidence against him, it is incredible that a motion to withdraw his guilty plea would have met with success. "Trial counsel's decision not to pursue an unsupported motion for withdrawal of the plea cannot be deemed deficient or prejudicial performance under <u>Strickland</u> [<u>v.</u> <u>Washington</u>, 466 U.S. 668, 687 (1984)]." <u>Id.</u> at *6. Accordingly, Claim Two (a) will be dismissed.

**B.    Claim Two (b)**

In Claim Two (b), Goad asserts that Gavin defectively failed to argue at sentencing that Goad's lies at the June 20, 2008 debrief did not breach the Plea Agreement because, at the time Goad lied, the Plea Agreement was not in force because the

22

Assistant United States Attorney had not yet signed it. (Mem. Supp. § 2255 Mot. 55.) However, Goad's eligibility for a decrease in offense level for acceptance of responsibility did not hinge on whether the Plea Agreement was valid at the time Goad lied.

Though the Government charged Goad with two counts of obstruction of justice, these charges were not based on the lies Goad told during his June 20, 2008 debrief. The obstruction of justice charges were based on Goad's attempts to convince others to lie on his behalf. See United States v. Goad, No. 3:08cr409, Docket No. 1, at 1-2 (E.D. Va. filed Sept. 16, 2008). The United States Sentencing Commission Guidelines Manual ("USSG" or "Guidelines") states that "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice)[11] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply." USSG § 3E1.1 cmt. n.4 (2008). Goad does not demonstrate any extraordinary circumstances here.

---

[11] Due to Gavin's efforts, the Government dismissed the indictment charging Goad with two counts of obstruction of justice in favor of a two-level increase in offense level pursuant to USSG § 3C1.1. Goad, No. 3:08cr409, Docket No. 18 (E.D. Va. Jan. 23, 2009).

Thus, even apart from his dishonesty during the June 20, 2008 debrief, Goad was ineligible for any decrease in offense level for acceptance of responsibility. In light of this fact, Goad cannot demonstrate prejudice resulting from Gavin's failure to raise the argument that the Plea Agreement was not in effect during the June 20, 2008 debrief. Accordingly, Claim Two (b) will be dismissed.

### C. Claim Two (c)

In Claim Two (c), Goad asserts that Gavin revised Goad's letter to the Court without Goad's authorization. Goad submits copies of both the original, handwritten letter and the typed version later received by this Court. Gavin states that he revised Goad's letter "in [Goad's] presence" and with Goad's "authority and permission." (Gavin Aff. ¶ 10.) Assuming, arguendo, the truth of Goad's assertions that Gavin revised the letter without Goad's authority, Goad fails to demonstrate how these revisions prejudiced him. Accordingly, Claim Two (c) will be dismissed.

### D. Claims Two (d), (e), (f)

Goad asserts that Gavin deficiently failed to call witnesses at sentencing (Claim Two (d)) (Mem. Supp. § 2255 Mot. 57), that Gavin failed to "present evidence contrary to the government's evidence and [Goad's] own evidence by subpoenaing

witnesses on [Goad's] favor" (Claim Two (e)) (Id. at 59), and that "Gavin should have asked for subpoenas of witnesses . . . to prove that [Goad] was not the leader/organizer of the criminal enterprise"[12] (Claim Two (f)). (Id. at 61.) Goad, however, "has not identified any specific defense witnesses that should have been called nor does he proffer the substance of any witness's testimony." United States v. Brunson, No. 3:07CR372, 2012 WL 442123, at *4 (E.D. Va. Feb. 10, 2012). Thus, Goad cannot establish either deficiency or prejudice with respect to Claims Two (d), (e), and (f). Id. (citing Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990)). Accordingly, these claims will be dismissed.

### E.    Claim Two (h)

In Claim Two (h), Goad alleges that Gavin "should have vigorously challenged [the firearm] enhancement by bringing witnesses to challenge the evidence presented by the prosecution." (Mem. Supp. § 2255 Mot. 65.) Goad names ten witnesses who "would have shown that the guns were acquired a long time before the marijuana growing business, and none of

---

[12] The Court notes that in "DEFENDANT'S SUPPLEMENTAL POSITION ON SENTENCING AND MOTION FOR VARIANCE" ("Supplemental Position"), filed on February 12, 2009, Goad conceded his leadership role prior to sentencing. (Supp'l Pos. (Docket No. 69) 3); Feb. 13, 2009 Tr. 5:2-3.) Because Defendant's Supplemental Position does not contain page numbers, the Court employs the page numbers assigned by the Court's CM/ECF docketing system.

them were bought by [Goad]." (Id.) However, the factors used to determine whether the firearm enhancement applies do not include who acquired the firearm or when that person acquired it. See USSG § 2D1.1 cmt n.3. Thus, even assuming the availability of Goad's witnesses and that they would testify as Goad describes, this information would not have affected the applicability of the firearm enhancement.

"The [firearm] adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. (italics omitted). Goad does not dispute the presence of firearms in close proximity to the grow operation. Detective Pruess testified at sentencing that authorities commonly find growers using firearms to protect their marijuana and that it would be "odd to find . . . distributors that aren't guarding their wares with weapons."[13] (Feb. 13, 2009 Tr. 34.) Detective Pruess also stated that authorities discovered the firearms in Goad's bedroom in close proximity to a balcony overlooking the access door to the grow operation. (Feb. 13, 2009 Tr. 32-33.) Based on this evidence, the Court determined that "the fact of the matter is it's most

_____

[13] The Government conceded, however, that investigators did not "find anyone who said affirmatively that [Goad] told them he was maintaining these guns to protect the operation or that he had fired them in connection with the operation." (Feb. 13, 2009 Tr. 34.)

probable that the loaded weapons possessed in the house by a convicted felon who shouldn't have them at all and access to the one means of egress to the marijuana grow operation convinced me that the [firearm enhancement] applies." (Feb. 13, 2009 Tr. 57-58.)[14]

Goad offers no witness who could offer a plausible innocent explanation for the continued presence of multiple loaded firearms staged in a manner to protect his drug operation. Accordingly, because Goad fails to show either deficiency or prejudice, Claim Two (h) will be dismissed.

## F. Claim Two (g)

In Claim Two (g), Goad "claims ineffective counsel for attorny [sic] Gavin not challenging in an effective way, the enhancement given to [Goad] for allegedly employing a minor in the marijuana operation." (Mem. Supp. § 2255 Mot. 64.) "Prosecutor could not establish by preponderance of the evidence that the supposed minor started working before the age of 18." (Id.)

In direct contravention of these statements, at sentencing Detective Pruess unequivocally stated that Goad's stepson was

_____

[14] Gavin, for his part, swears that "there was no credible person to testify that would have supported Mr. Goad's position [that it was clearly improbable that the firearms were connected to the grow operation]." (Gavin Aff. ¶ 7.)

sixteen years old when he assisted Goad in the construction of the grow house. (Feb. 13, 2009 Tr. 37-38.) Further, Pruess swore that Goad's stepson was still under the age of eighteen when he "g[o]t back in the operation" "between the fourth or fifth grow." (Id.) Moreover, Gavin interviewed Goad's stepson and "confirmed that he was in fact a juvenile. . . . The juvenile's mother also confirmed the juvenile's testimony." (Gavin Aff. ¶ 5; Feb. 13, 2009 Tr. 16.) Goad cannot show deficiency or prejudice based on Gavin's failure to overcome such a showing. Accordingly, Claim Two (g) will be dismissed.

### G.  Claim Two (i)

In Claim Two (i), Goad "claims ineffective counsel in the way [Gavin] challenged the obstruction of justice enhancement." (Mem. Supp. § 2255 Mot. 68.) Goad asserts that "[t]here was no obstruction of justice in this case and the prosecution did not have the evidence to prosecute [Goad] with a count of obstruction of justice."[15] (Id.) Nevertheless, "Goad . . . agreed to withdraw his challenges to the obstruction of justice enhancement and his loss of acceptance of responsibility credit

---

[15] Goad also asserts that he "was offered a deal that if he signed the plea agreement, the investigation would stop, no other charges would come and no one else would be arrested." (Mem. Supp. § 2255 Mot. 72.) The Court notes that no such deal appears in the Plea Agreement and that, during his Rule 11 colloquy, Goad swore that nobody promised him anything outside the plea agreement. (June 20, 2008 Tr. 14.)

at sentencing on February 13, 2009 in exchange for the United States' agreement to dismiss the pending two-count indictment in this case." United States v. Goad, No. 3:08CR409, Docket No. 18, at 2 (E.D. Va. filed Jan. 23, 2009). Moreover, ample evidence exists in the record that, after his plea hearing, Goad actively pressured others, including his son, to lie on his behalf. (See Def.'s Supp'l Position 4; Feb. 13, 2009 Tr. 25-30.) Accordingly, because Goad demonstrates neither deficiency nor prejudice, Claim Two (i) will be dismissed.

### H. Claim Two (j)

In Claim Two (j), Goad asserts that Gavin was "ineffective in not arguing that [Goad's] sentence was unreasonable." (Mem. Supp. § 2255 Mot. 77.) Goad argues that his sentence, though within the guideline range, was unreasonable because the Court failed to take into account factors such as Goad's age and the disparity between Goad's sentence and Cynthia Goad's sentence. Despite Goad's assertions to the contrary, the Court considered such factors. Nevertheless, they did not warrant a lesser sentence. Goad was the driving force behind the marijuana conspiracy. Goad cannot demonstrate that Gavin's failure to object to the reasonableness of Goad's sentence at the sentencing hearing prejudiced Goad. Accordingly, Claim Two (j) will be dismissed.

29

## I. Claim Two (k)

In Claim Two (k), Goad faults Gavin for failing to appeal the Court's rejection of Goad's motion to unseal Cynthia Goad's pre-sentence report. (Mem. Supp. § 2255 Mot. 85.)[16] "That file with all the false statements made by [Goad's] wife was important to pre[s]ent evidence and witnesses in favor of [Goad's] character and actions." (Id.)

"The district courts have statutory authority to certify certain issues for appeal on an interlocutory basis in civil cases, see 28 U.S.C. § 1292(b), but no such provision exists for criminal cases. Thus, . . . interlocutory appeals [in criminal cases] are not generally allowed." United States v. Blackwell, 900 F.2d 742, 746-47 (4th Cir. 1990). To avoid this bar, "an interlocutory order must be: (1) the trial court's complete, formal, final rejection of the claim; (2) collateral to, and separable from, the issue of guilt or innocence; and (3) an adjudication of an important right that would be lost irreparably if review awaited final judgment." Id. (citing United States v. MacDonald, 435 U.S. 850, 858-60 (1978)). "The

---

[16] The Court denied Goad's motion "because there are no relevant portions of [Cynthia Goad's] Presentence Report or attachments thereto containing information not otherwise available in the record." (Feb. 9, 2009 Mem. Order (Docket No. 68) 1.)

[Supreme] Court has warned that the requirements of the collateral order exception to the final judgment rule should be applied 'with the utmost strictness in criminal cases.'" <u>Id.</u> at 747 (quoting <u>Flanagan v. United States</u>, 465 U.S. 259, 265 (1984)).

Goad does not address the collateral order exception, much less show that the exception applies to this Court's February 9, 2009 Memorandum Order denying his motion to unseal Cynthia Goad's Pre-Sentence Report. Thus, Goad cannot demonstrate that Gavin deficiently failed to file an interlocutory appeal of this order. Accordingly, Claim Two (k) will be dismissed.

### J. Claims Two (l) & (n)

In Claim Two (l), Goad "claims ineffective counsel by not presenting to the Court and the Probation Officer writing the PSR about Defendant's depression and at times was suicidal." (Mem. Supp. § 2255 Mot. 86.) In Claim Two (n), Goad claims that Gavin lied to Goad in a letter describing his appellate rights. (<u>Id.</u> at 89.) These claims lack factual merit.

In the Supplemental Position, submitted prior to sentencing, Gavin wrote that Goad "has more than likely been depressed for a long time. [Goad] admits that he is an alcoholic and had been drinking daily, and heavily, in recent years." (Supp'l Pos. 11.) Because Gavin noted Goad's

31

depression to the Court, Goad cannot show deficiency or prejudice in Claim Two (l).

Goad claims that Gavin's letter of February 19, 2009 (Gavin Aff. Ex. D) falsely stated that "[u]nder paragraph 6 of your Plea Agreement, you waived your right to appeal any sentence imposed. Notwithstanding, as the Judge advised, you do have a right to appeal." (Id.; Mem. Supp. § 2255 Mot. 89.) The letter, however, correctly states both the law and facts. (See Plea Agreement ¶ 6; Feb. 13, 2009 Tr. 66.) Thus, Goad cannot show deficiency or prejudice in Claim Two (n). Accordingly, Claims Two (l) and (n) will be dismissed.

### K. Claim Two (m)

In Claim Two (m), Goad asserts that Gavin failed to challenge the enhancements at sentencing. (Mem. Supp. § 2255 Mot. 87.) Goad received four sentencing enhancements, to wit: possession of a firearm (USSG § 2D1.1(b)(1)), being an organizer or leader (USSG § 3B1.1(a)), using a minor to commit a crime (USSG § 3B1.4), and obstruction of justice (USSG § 3C1.1). Gavin argued against the possession of a firearm enhancement and the using a minor to commit a crime enhancement at sentencing. Thus, Goad fails to show deficiency or prejudice as Claim Two (m) relates to those enhancements.

### 1. Goad's Leadership Enhancement

In the Statement of Facts, Goad admitted that he and his wife "maintained a marijuana 'grow house' within their primary residence." (Statement of Facts 1.) Goad also admitted that "[d]uring the course of the [marijuana grow] operation, [Goad] oversaw the marijuana cultivation and harvests, and directed the co-conspirators in the grow operation, to include his wife and others." (Id.)

The Guidelines state that a leadership enhancement "may be warranted . . . in the case of a defendant who . . . exercised management responsibility over the property, assets, or activities of a criminal organization." USSG § 3B1.1 cmt. n.2. Here, by his own admission, Goad falls within these guidelines. Thus, Gavin had no non-frivolous basis to object to the leadership enhancement. Goad cannot show deficiency or prejudice based on Gavin's refusal to make a frivolous objection.

### 2. Goad's Obstruction Enhancement

Goad asserts that, subsequent to the Court's dismissal of the indictment in Criminal Case No. 3:08CR409, Gavin deficiently failed to challenge the obstruction of justice enhancement at sentencing. Goad, however, fails to articulate any coherent, non-frivolous basis for challenging this enhancement. Here, as

with the leadership enhancement, Goad cannot show deficiency where Gavin failed to make a frivolous objection.

Given the overwhelming evidence of Goad's obstructionist activities (see Feb. 13, 2009 Tr. 26-30, 50-51) and the procedural posture of the instant case and Criminal Case No. 3:08CR409 at the time Gavin conceded the obstruction enhancement, Goad fails to establish that Gavin's conduct was either deficient or prejudicial. See Strickland, 466 U.S. at 694.

Goad does not demonstrate deficiency or prejudice in Gavin's conduct related to any of the sentencing enhancements. Accordingly, Claim Two (m) will be dismissed.[17]

### L.   Claim Two (p)

In Claim Two (p), Goad asserts that Gavin deficiently failed to challenge that "'more than 1000 [marijuana] plants'" were attributable to him at sentencing. (Mem. Supp. § 2255 Mot. 93.) However, Goad pled guilty to conspiracy to

_____

[17] Prior to the February 13, 2009 sentencing hearing, the Court "considered giving notice of an intent to vary in this case upwardly with a view to imposing the maximum statutory punishment [of life imprisonment] because I think the record reflects that you are dangerous." (Feb. 13, 2009 Tr. 62.) However, due to Gavin's efforts, the Court decided to impose a sentence within the guideline range stating: "I'm going to tell you something [Mr. Goad]. You ought to give great thanks to Mr. Gavin for the fine job that he did in putting together a case that kept you out of prison for the rest of your life as of today." (Id. at 67.)

manufacture in excess of 1000 marijuana plants. (June 20, 2008 Tr. 5:9-20; Statement of Facts ¶ 1.) Thus, Gavin had no non-frivolous basis to object to that amount of plants. Goad cannot show deficiency or prejudice based on Gavin's refusal to make a frivolous objection. Accordingly, Claim Two (p) will be dismissed.

## VII.   CONCLUSION

For the foregoing reasons Goad's claims will be dismissed. Goad's § 2255 Motion (Docket No. 90) will be denied and the action will be dismissed. A certificate of appealability will be denied.[18]

The Clerk is directed to send a copy of the Memorandum Opinion to Goad and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: November 5, 2012
Richmond, Virginia

---

[18] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Goad fails to satisfy this requirement.